HERMAN O. LANGE v. THE MUSKEGON BOOMING COMPANY.

*Trover—Sale of timber—Estoppel—Foreign executors.*

Foreign executors of a non-resident sold on contract certain timbered land to one McFarlane, retaining a claim on the *timber* for the unpaid purchase price. McFarlane agreed to sell to Torrent & Ducey the white pine logs on the land, *suitable* for *lumber*, and to put same afloat during the current lumbering season, the purchase price to consist of the assumption of the payment of the balance due on the land, the payment to McFarlane of $3,000 down, and stated amounts *per thousand feet* as the logs were scaled and put afloat. Such payments were based, as to amount, on the *estimated* cut of the timber, which proved to be so excessive that the agreed payments largely exceeded the purchase price of the logs.

Afterwards McFarlane sold the *shingle* logs on the land to other parties, who paid for the same, and were assured by Torrent & Ducey of McFarlane's right to make such sale; but, on discovering the shortage in the *lumber* logs, Torrent & Ducey sought contribution from the purchasers of the shingle logs, which was refused; whereupon they arranged for the conveyance of the land, and assignment of the land contract, by the executors to plaintiff—a son-in-law of Torrent, who paid nothing, and is claimed to have acted for Torrent & Ducey—in consideration of the payment of the balance due on the land. McFarlane consented to this, being assured that he would be in no way affected thereby. Plaintiff, claiming title to the shingle logs then afloat and in the possession of defendant, brought trover for their value, and verdict passed for defendant.

*Held,* that while it is clear that Torrent & Ducey expected, at the time of contracting with McFarlane, to pay the balance due the executors, yet the court properly held that such obligation was *limited* to the stipulated price agreed to be paid for the logs.

*Held,* further, that McFarlane could not lawfully jeopardize the interests of the purchasers of the *shingle* logs, which sale had been assented to by Torrent & Ducey, who secured his consent to the conveyance and assignment to plaintiff with the assurance that no advantage was to be taken of him.

*Held,* further, that the transfer of the *cut* logs was made by the *assignment* of the *contract*, and subject to all existing equities, as against McFarlane, without whose consent such transfer would not have been made.

*Held,* further, that when plaintiff undertook to repudiate his relations under the *McFarlane* contract, and claim as assignee of the executors, he was bound to show title, and could not bind

defendant without binding himself as to the source of title; and, no authority being shown on the part of the executors to bind lands in Michigan, this would prevent a reversal of the judgment.

Error to Muskegon.    (Russell, J.)    Argued November 3, 1886.    Decided November 11, 1886.

Trover.    Plaintiff brings error.    Affirmed.    The facts are stated in the opinion.

*Smith, Nims, Hoyt & Erwin,* for appellant.

[No authorities cited.—REPORTER.]

*Keating & Dickerman,* for defendant:

The force of a grant of administration is confined to the jurisdiction granting it:    *Vickery v. Beir,* 16 Mich. 50; *Sheldon v. Rice Estate,* 30 Id. 296; *Thayer v. Lane,* Walker, Ch. 200; *Apperson v. Bolton,* 29 Ark. 418; Story, Confl. Laws, § 512.

CAMPBELL, C. J.    Plaintiff sued defendant for the conversion of a lot of shingle logs, which had been run for a firm of Doherty & Baars, and delivered to them after it is claimed defendant had notice that they belonged to plaintiff.    The title of Doherty & Baars was derived from John B. McFarlane, who had a land contract from the estate of William E. Dodge, deceased, who was a non-resident.    This contract was made in November, 1884, and agreed to convey the land on which the logs were cut for $28,000, of which $2,000 had been paid down, and the remainder of $26,000 was payable in notes, on time.    The vendor retained a claim on the timber till paid for.

December 27, 1884, McFarlane agreed to sell to the firm of Torrent & Ducey all the white pine logs suitable for merchantable common lumber at $10.50 a thousand, and he was to cut off the timber during the current lumbering season, and put it afloat in the hands of defendant.    The terms of payment were—

1. That Torrent & Ducey should assume and pay the notes to the Dodge estate of $26,000.

2. Pay $3,000 down, and thereafter to pay $1 per thousand as logs were scaled, $1 when banked, and 50 cents when afloat; but the advances were not, in all, to exceed $3 per thousand, afloat.

It had been estimated that these logs would reach 5,000,-000, but they appear to have fallen very far short, so that all the payments, first and last, to be made, would exceed the agreed price.

Shortly after this sale to Torrent & Ducey, McFarlane sold to Doherty & Baars the shingle logs in question, which were not included in the Torrent & Ducey sale, and received pay for them. Before purchasing, Doherty & Baars were assured by Torrent & Ducey that McFarlane had a right to sell them, and they had no interest in them.

Torrent & Ducey afterwards discovered that their own logs would fall short, and wanted Doherty & Baars to contribute towards making up the payment, in proportion, but they declined doing so.

Torrent & Ducey then endeavored to get an extension of time from the Dodge estate, which they could not obtain without the consent of a surety upon the notes. Finally they made an arrangement to get the estate, upon payment of the notes, to assign the McFarlane contract and convey the land to plaintiff, who was Torrent's son-in-law, and who paid nothing, and is claimed to act in their interest. This was refused unless McFarlane would give his written consent; and, on obtaining this, the evidence tends to show he was assured he would be in no way affected by it. Lange now claims that by this transaction he obtained title to the shingle logs.

The case was tried before a jury, and they found for the defendant. No errors are assigned here except on charges and refusals to charge.

The first request was for a charge that the title to the

logs was in plaintiff. This would have made most of the other charges unimportant, and therefore it is unnecessary to consider it separately.

The second request was only important in the same direction. There was no dispute, and the charge made none, concerning how much was unpaid on the McFarlane contract to the Dodge estate, when the contract was held by it.

The sixth was that payment of the notes indorsed by Peter McFarlane would have discharged him, and this intention is not shown. This was not material, so far as we can see, in this controversy. So far as defendant is concerned, it has no interest in any but the shingle logs, and it makes no difference, except for that, who holds the contract. That question might, under some circumstances, have some bearing on the intent of the parties; but, if the effect of the transaction would have been to discharge the indorser, it would have that effect without proof of specific intent.

The case was made by the court below to turn chiefly on the question whether the transaction involved an actual intent on the part of Torrent & Ducey to pay the McFarlane contract, and the jury either found it did so, or else that there was some defect in proof of the conversion, which is not claimed.

We think this arrangement was fairly left to the jury. There is no question whatever but that Torrent & Ducey actually expected, when they made their contract with McFarlane, to pay what was due the Dodge estate, and specifically agreed to do so. But the court below properly held that they were not bound to McFarlane to pay more than the stipulated price, and that, if the advances exceeded the balance due, then their obligation should be reduced accordingly. But the Dodge contract was for land, and included, not only pine, but all other timber, and this did not belong to Torrent & Ducey, and the estate had no right, and refused, to convey without McFarlane's consent. There was testimony indicating some value in this land.

McFarlane could not lawfully jeopardize the interests of Doherty & Baars. He had sold them these logs with assurances of right to do so, and Torrent & Ducey were participants in this assurance. When they took McFarlane's consent to the transfer of his contract rights in the whole property, he swore it was with the representation and assurance that no advantage was to be taken of him whatever.

Under these circumstances, it would have been a fraud to disturb a sale, made with their knowledge and encouragement, which McFarlane must have been bound to make good, and the jury might properly conclude that there was no purpose to commit such a fraud. Lange is a mere figurehead in the matter, and has no better rights than they had. The transfer of the cut logs was not made by the deed, but by the assignment of the contract, and subject to all equities among the parties, as against McFarlane, without whose consent no transfer would have been made. We do not see how any conclusion could have been reached, properly, which would have defeated the title of Doherty & Baars. There was no conflict really, that we have been able to discover, on the facts which protected them.

In affirming the judgment, we may also say that when Lange undertook to repudiate his relations under the McFarlane contract, and claim as assignee of the Dodge estate, he was bound to show title. He could not bind defendant, and not be bound himself, as to the source of title. No proof was made of any authority to bind lands in Michigan, and this would have prevented disturbing the judgment below; but we have preferred to consider the case as the merits were brought out on the trial.

The judgment must be affirmed.

The other Justices concurred.